**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

TYLER THOMPSON-COPELAND,

    Plaintiff,

    v.

LT. R. CHURCH, JR., et al.,

    Defendants.

Civil Action No.: ABA-25-1675

**MEMORANDUM OPINION**

Plaintiff Tyler Thompson-Copeland, an inmate at Maryland Correctional Institution –
Jessup, sues Director Walt Pesterfield, Lt. R. Church, Jr., Sgt. Austin, Sgt. A. Cordero, Officer
Tejani, and Officer Langford of the Baltimore County Detention Center ("BCDC"). ECF No. 1.
Defendants originally moved to dismiss the Complaint or, in the alternative, for summary
judgment to be granted in their favor. ECF No. 11. The following day Defendants amended their
Motion. ECF No. 14. Thompson-Copeland was notified of his right to respond to Defendants'
Amended Motion (ECF No. 15) but, to date, has not filed anything in response. For the following
reasons, Defendants' original Motion is denied as moot and the Amended Motion is granted.

**I.    Background**

Thompson-Copeland alleges that, on the evening of April 22, 2025, he was escorted to a
restrictive housing unit at BCDC for ten days following a fight with another inmate. ECF No. 1 at
5. During this time he was assigned a cell mate; Thompson-Copeland slept on the floor while the
other inmate slept in the bunk. *Id.* Thompson-Copeland states that Sgt. Austin and several other
officers conducted bunk checks on April 30, 2025; he states that later that evening he received a
ticket charging him with destruction of state property due to a hole in the bunk. *Id.* According to
Thompson-Copeland, the hole was there prior to his arrival and both he and his cellmate had

informed correctional staff about the exposed metal on which the cellmate had cut himself numerous times. *Id.* Thompson-Copeland and his cellmate informed Sgt. Cordero, who "circled the bigger hole but left the smaller one uncircled [sic] stating that he didn't think they would move [them] for that." *Id.* Thompson-Copeland asserts that other correctional officers were also aware of the holes in the bunk, but nothing was done. *Id.*

Thompson-Copeland was found guilty of a rule violation and received 25 additional days in restrictive housing following his disciplinary hearing, which was conducted by Officer Langford. *Id.* at 5-6. Thompson-Copeland states that he was not allowed to present witnesses at his hearing and claims that Sgt. Austin and Lt. Church forged Sgt. Cordero's name on the ticket, which is why he received the ticket approximately seven hours after the incident in question. *Id.* at 6. Thompson-Copeland asserts that Sgt. Cordero admitted that he did not sign the ticket and in fact had no knowledge of it, but because his name was on it, he could not appear as a witness for Thompson-Copeland. *Id.* Thompson-Copeland further states that Langford's decision was not based on any evidence but solely on the fact that he was assigned to that cell. *Id.* at 6-7.

Thompson-Copeland complains that the conditions in the restrictive housing unit were cruel and unusual. He states that between May 9 and May 14, 2025, he was subjected to total darkness in his cell because the light broke. *Id.* at 7. Thompson-Copeland explains that the light broke on a Friday and should have been fixed on the following Monday, but it took two more days to fix it. *Id.* He contends he could not do anything but sleep in the darkness of his cell and was receiving only an hour of recreation, sometimes less. *Id.* Thompson-Copeland also complains that on one occasion he was in his cell for two hours with urine and feces flowing in after it had been poured over his neighbor's door. *Id.*

2

Thompson-Copeland states that his complaints to Director Pesterfield and the Deputy Director about the false ticket were ignored as was his appeal of the disciplinary ticket. *Id.* at 7-8. Thompson-Copeland asserts that Pesterfield fails to hold his employees accountable for their misconduct. *Id.* at 8. He also asserts that Officer Tejani "was aware of the problem and failed to report it or speak up on [Thompson-Copeland's] behalf." *Id.* Thompson-Copeland seeks compensatory damages and for BCDC to be investigated for negligence. *Id.* at 9.

Defendants submit Baltimore County Department of Corrections Directive 3.3.03, which outlines the procedures for inmates to file formal complaints. ECF No. 14-3. The process is used for all complaints except for parole decisions, classification actions, and formal disciplinary decisions. *Id.* at 2. If an issue cannot be resolved informally, an inmate is to be given Inmate Complaint Form #200 on which to submit the complaint to the Director's designee. *Id.* The designee assigns the complaint to a supervisor who is tasked with interviewing the complaining inmate and other relevant individuals to investigate the complaint. *Id.* The Director's designee must forward the supervisor's decision to the complaining inmate within 15 days of receipt. *Id.* Stephen Verch, Administrative Manager for the Baltimore County Department of Corrections, attests that it is his responsibility to process Inmate Complaint Form #200 but that a search of his records did not reveal any evidence that Thompson-Copeland filed any formal complaint between April 2025 and September 9, 2025, concerning the facts alleged in the Complaint. ECF No. 14-4 at ¶ 1-6. Verch also avers that Thompson-Copeland received a copy of the Inmate Rules and Regulation Handbook during his intake at BCDC on July 28, 2024, which includes an explanation of how to use the complaint process. *Id.* at ¶¶ 7-8; ECF No. 14-5 at 1. Defendants also submit an unrelated formal complaint form submitted by Thompson-Copeland shortly before the events at issue occurred. ECF No. 14-6.

## II.    Standard of Review

Defendants move to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor under Rule 56. Such motions implicate the Court's discretion under Rule 12(d). *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court maintains discretion "'whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. CIV.A. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Thompson-Copeland was placed on notice that Defendants sought summary judgment in their favor, and he was given an opportunity to respond (and did not respond). ECF. No. 15. Accordingly, the Court will assess the sufficiency of Thompson-Copeland's claims under the summary judgment standard where appropriate. *See, e.g.*, *Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005). Pursuant to Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must "view the evidence in the light most favorable to…the nonmovant, and draw all reasonable inferences in [the non-movant's] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

The Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [the non-movant's] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249–50.

## III. Analysis

### a. Exhaustion of Administrative Remedies

Defendants assert that Thompson-Copeland has not exhausted his administrative remedies as to his conditions-of-confinement claims, and therefore they are entitled to judgment in their favor. ECF No. 14-1 at 4-6. Pursuant to the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. Although exhaustion under § 1997e is not a jurisdictional prerequisite, a plaintiff must nonetheless exhaust before this Court will hear the claim. *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005). Because the Court may not consider an unexhausted claim,

exhaustion prior to federal suit is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Exhaustion requires an inmate to complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). Importantly, however, the Court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *see Ross*, 578 U.S. at 636. An administrative remedy is not "available" where the prisoner, "through no fault of [their] own, was prevented from availing [themself] of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda*, 478 F.3d at 1225); *Kaba*, 458 F.3d at 684.

Here, even when the evidence is viewed in the light most favorable to Thompson-Copeland, the undisputed record establishes that he failed to exhaust his conditions-of-confinement claims. The record shows that between the date of the alleged incidents and the filing of his Complaint, he did not file a #200 form stating his grievances. The Court notes that in his Complaint, Thompson-Copeland asserts that despite requesting the #200 form multiple times, he was not provided one. ECF No. 1 at 4. As a general rule, however, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like respond to the motion. *Celotex Corp.*, 477 U.S. at 324; *Kipps v. Ewell*, 538 F.2d 564, 566 (4th Cir. 1976). Therefore, his statement that he did not receive the form, unsupported by any evidence in the record, is insufficient to rebut the evidence submitted

by Defendants that Thompson-Copeland did not exhaust his administrative remedies as to his conditions-of-confinement claims. Therefore, Defendants are entitled to summary judgment on those claims and the claims will be dismissed without prejudice.[1]

### b. Disciplinary Hearing Due Process

In regard to Thompson-Copeland's allegations that his due process rights were violated during his disciplinary hearing, Defendants argue that the Complaint, even with all factual allegations accepted as true, fails to establish a Fourteenth Amendment violation. ECF No. 14-1 at 8-9. Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, the inmate is entitled to certain due process protections including: (1) advance written notice of the charges; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where the inmate is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564–66, 592.

---

[1] While Defendants have moved for summary judgment and the Court has considered evidence attached to the motion in reaching the conclusion herein, the Fourth Circuit has advised that dismissal for failure to exhaust should be without prejudice. *See Moss v. Harwood*, 19 F.4th 614, 623 n.3 (4th Cir. 2021) (collecting cases); *Germain v. Shearin*, 653 F. App'x 231, 234–35 (4th Cir. 2016) (finding dismissal "mandatory" for failure to exhaust and affirming district court's grant of summary judgment but modifying order to be dismissal without prejudice).

There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504–05 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, procedural due process generally is satisfied. *See Baxter*, 425 U.S. at 322 n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon at least "some evidence." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985); *Tyler v. Hooks*, 945 F.3d 159, 171 (4th Cir. 2019) ("the 'some evidence' standard is extremely broad in scope and presents a very low burden for prison officials to meet.").

As to the alleged falsification of the disciplinary ticket, the Fourth Circuit has held that generally "a false disciplinary charge cannot serve as the basis for a constitutional claim." *Cole v. Holloway*, 631 F. App'x 185, 186 (4th Cir. 2016) (noting that there may be exceptions where the action is retaliatory or arbitrary) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). Here, Thompson-Copeland has not alleged any motivation behind Sgt. Austin or Lt. Church's actions. As such, he does not plead sufficient facts to proceed with this claim.

As to the disciplinary hearing itself, Thompson-Copeland challenges his inability to call Sgt. Cordero as a witness and the evidence on which Officer Langford relied to make the decision. Both claims fail. Although Thompson-Copeland decries that he could not call Cordero as a witness, the Complaint does not state that this is the result of anyone's misconduct during the proceedings. Thompson-Copeland says that Cordero told him he could not serve as a witness, but Langford did not deny any request. Thompson-Copeland in fact did not make any request for witnesses as documented in the incident report he attaches to his Complaint. ECF No. 1-1. Corder's provision of an explanation to Thompson-Copeland's personal request does not rise to a constitutional

violation. Finally, Thompson-Copeland also fails to plead sufficient facts to show that Langford's decision violated his substantive due process rights. As explained above, the "some evidence" standard is a low bar but one that appears to have been satisfied. Thompson-Copeland acknowledges that the decision was based on his assignment to that cell. He does not claim that Langford's decision was wholly arbitrary and therefore does not state a claim for relief. The Court also notes that contrary to Thompson-Copeland's pleadings, the attached incident report states that he was the only individual assigned to that cell at the time of the bunk check. ECF No. 1-1. Accordingly, Thompson-Copeland's due process claims must be dismissed.

### c. Supervisory Liability

Defendants also argue that Thompson-Copeland fails to establish a supervisory liability claim against Defendant Pesterfield. ECF No. 14-1 at 9-10. Generally, § 1983 does not impose liability on supervisors for the wrongdoing of their employees. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Rather, a supervisor may be liable for the violations of their subordinates if the supervisor knew the subordinates engaged in conduct that posed an unreasonable risk of constitutional injury and failed to respond in such a manner that gives to an inference of deliberate indifference or tacit authorization of their subordinates' bad acts. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Even under the assumption that Thompson-Copeland established some wrongdoing by Pesterfield's subordinates, Thompson-Copeland's conclusory allegation that Pesterfield failed to hold his employees accountable for wrongdoing is insufficient to state a claim. Thompson-Copeland provides no details regarding Pesterfield's knowledge of such misconduct nor does he plead facts supporting an inference of deliberate indifference. The Complaint against him must be dismissed.

**IV.      Conclusion**

For these reasons, Defendants' Amended Motion to Dismiss or, in the Alternative, for Summary Judgment is granted and the Complaint will be dismissed. A separate Order follows.


  May 18, 2026
Date

                                                        /s/
                                          Adam B. Abelson
                                          United States District Judge